THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MARTÍN MARTELL CAJIGAS, Defendant and Appellant.

No. CR-62-277. Decided June 26, 1963.

618

*Ángel Viera Martínez* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *J. F. Rodríguez Rivera, Assistant Solicitor General,* for The People.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

PER CURIAM: Martín Martell Cajigas was accused and convicted of the offense of attempt to commit rape and was

sentenced to serve from 3 to 7 years in the penitentiary. The sentence was suspended subject to the conditions stated therein. He assigns thirteen errors in the appeal filed.

1. The first error refers to the frequent and unnecessary intervention of the trial judge, questioning witnesses, arguing and commenting while deciding several incidents, injured appellant's rights to a fair and just trial.

■ We have examined with great care and consideration the record of the different incidents[1] referred to as a whole

[1](a) To this effect he assigns the judge's intervention during the prosecutrix's examination by the prosecuting attorney to clarify that defendant asked her whether she worked in the Professional Building and she said that she worked in the drugstore. It was alleged that the intervention was unnecessary because on questions of the prosecuting attorney the witness had testified on this matter. No charge of prejudice is made. We believe that the intervention was justified within the province of the court to ask questions to make the facts clear. *People* v. *Rivera*, 71 P.R.R. 115, 119 (1950), *cf. People* v. *Aletriz*, 85 P.R.R. 621 (1962).

(b) The judge's expression "What else?" interrupting the prosecuting attorney's examination on several occasions is assigned, as well as other questions by the judge during said examination objected to as prejudicial, which were aimed at enlightening the facts and were harmless. *People* v. *Vázquez*, 87 P.R.R. 698 (1963); *People* v. *Rivera, supra*; *People* v. *León*, 53 P.R.R. 408 (1938).

(c) That the trial judge intervened in the prosecutrix' cross-examination and did not permit it to cover certain facts, without the prosecuting attorney having made any contention or objection whatsoever and that on other occasions the trial judge did not permit questions because they had been answered previously, without the prosecuting attorney's objection. The court's intervention as stated constituted proper conduct within its discretionary power and it did not prejudice the defense. *People* v. *Saltari*, 53 P.R.R. 850 (1938).

(d) That the trial court limited the prosecutrix' cross-examination at the moment when the defense intended to impeach her by showing her her answer to an interrogatory referring to a complaint filed by her on the same facts of the criminal cause. We agree with the Solicitor General in that the court's action tended to limit the additional time available to the defense in its turn of cross-examination after having spent a day and a half in said examination, is being within its discretion to limit the turns in the witnesses' examination. Not having abused said discretion, the court did not err. *People* v. *López*, 71 P.R.R. 1, 3 (1950); *People* v. *Pellicier*, 56 P.R.R. 846 (1940); *The People* v. *Santiago*, 16 P.R.R. 446 (1910).

in support of the error assigned. We decide that although the trial judge intervened on several occasions during the witnesses' examination, he did so for the purposes of accelerating the proceedings, preventing the enlargement of the record, and making the evidence clear. Its different rulings motu proprio do not constitute the most advisable cause of action

(e) That the court sustained the prosecuting attorney's objection to the testimony of a witness in the sense that the prosecutrix was covering her face because "she wanted no one to see her face," while it permitted that same witness to conclude, over the defense's objections, that the prosecutrix "desperately called for help" and another witness to testify that she noticed the prosecutrix was "anxious"; on other occasions the court intervened unnecessarily during the prosecuting attorney's examination; on another occasion the court, without the previous objection of the prosecuting attorney, did not permit a question related to a previous written statement because in order to impeach the witness the statement must be previously shown to him in accordance with the doctrine established in *People* v. *Lebrón*, 61 P.R.R. 634, 649 (1943), it being alleged by the defense that it was first laying the foundation to find out whether there were sufficient bases between the statement and the question, to confront the witness with the statement in relation to the fact of whether the witness had been questioned when he originally testified whether the prosecutrix had the smell of liquor or whether he had been asked said question at some later time. On another occasion the court intervened to repeat the testimony of a witness that he could have forgotten that the prosecutrix told him that defendant annoyed her, the court adding that the witness had previously testified that he did not remember, that the record contains the answer to the question asked, and therefore the court will not permit that the record be unnecessarily enlarged. On another occasion in which the defense cross-examined a witness as to the facts testified in court and not included in the witness' statement prior to the trial, the court, motu proprio, asked the witness what the attitude of the prosecutrix was when the witness came near the automobile where she was, notwithstanding the objection of the defense on the ground that the prosecuting attorney had no more questions and all the questions were covered by the direct examination (when the witness testified that he noticed she was nervous) the witness answered at the request of the court that "she was nervous and crying." On another occasion the court motu proprio overruled a motion of the defense to the effect that the prosecuting attorney produce a witness' statement made to the prosecuting attorney as to the facts which he testified to at the trial. Then the court asked the prosecuting attorney whether he had any objection as to producing the statement and he answered in the affirmative. The witness in question had been waived by the prosecuting attorney and called by the defense. On another occasion, the prosecuting attorney tried to impeach the same witness, reading part

in the conduct of a criminal cause. Although it is preferable for the trial judge to avoid as far as possible such active intervention in the witnesses' examination, the record does not show that he did so to contradict or discredit any witness whatsoever, or that the intervention went to the extreme of

---

of his previous statement, and the court objected to the manner of impeachment by maintaining its ruling notwithstanding the insistence of the defense to have the prosecuting attorney ask everything.

(f) That evidence was admitted over the defense's objection in the sense that it was hearsay evidence, consisting in the testimony of the prosecuting attorney himself, witness for the defense, to the effect that he went with the star witness to María Luisa Benítez' business to talk with her about the facts of the case; upon being examined by a representative of the prosecution the prosecuting attorney testified that Benítez said she had never seen the prosecutrix and that the latter said: "Look here, lady, a little girl who was here brought me some water. . . ." The court admitted the testimony because the defense had asked the witness whether she went there, for what purpose, and with whom. When the defense asked its witness María Luisa Benítez as to the conditions of her business previously classified as "of very poor appearance" in the prosecuting attorney's testimony as a witness for the defense, the prosecuting attorney objected and the court said: "She is a witness for the defense. Do you want to impeach her?" and the court sustained the objection. Another incident arose with said witness when the prosecuting attorney asked her whether after her first marriage she had lived with other men. The trial court said that it could investigate the witness' background although when the defense asked the prosecutrix whether her sister, Antonia, was single or married, the court ruled that it was immaterial. When the witness answered that said question was improper, the court said: "The witness does not have to say that. The objection of the defense is sustained." From the record it appears that the defense stated that the court addressed the witness excitedly and that the court stated that it was firmly calling the attention of the witness and also of counsel for the defense. On cross-examination said witness told the prosecuting attorney "you have confused me with the previous question. I am going to start once more." The court did not permit it and ruled that "the court shall not permit the witness to repeat what she has already testified to."

(g) That on one occasion the court sustained the objection of the prosecuting attorney to a question on interruptions in the electric power service according to the records on the ground that it was a leading question and because the record was the best evidence, while it sustained the prosecuting attorney's question as to which are more frequent, the interruptions in the homes or in the public service, notwithstanding the defense's contention that the records constituted the best evidence.

(h) The last incident cited by the defense to prove the objectionable and biased attitude of the trial court consisted in denying the admission

624

creating prejudice in the minds of the jury. Actually, the trial judge's action in this case was not such as would lead to the conclusion that "the judge skillfully displayed in this case the mission reserved by law to the prosecuting attorney", as we said in *People* v. *Aletriz, supra.* We do not have before us in this case a clear and unquestionable record showing that the trial court's action deprived defendant of a fair and impartial trial, as was evident in *Aletriz, supra; People* v. *Bartolomei,* 70 P.R.R. 664 (1949) ; *People* v. *Acevedo,* 35 P.R.R. 886 (1926).

2. It is alleged in the second error that when, for the purpose of impeachment, the defense confronted witness Socorro Avilés with her statement before the prosecuting attorney, the court decided that there was no contradiction, since the decision of whether or not there was contradiction was exclusively incumbent upon the jury, for it was a question of fact.

■ Said witness, the prosecutrix in this case, had testified that she had told the defendant that she was a practical pharmacist. The defense confronted her with her previous statement of whether she had told this to defendant or "somebody had told him (the defendant)." As to whether or not the defense could utilize the statement the court decided that there was no contradiction between said statement and the witness' testimony. In *People* v. *Olivencia,* 54 P.R.R. 864, 883 (1939), we said, in very similar circumstances that, "It would have been better had the judge expressed no opinion,

requested by the defense of the previous statement of Osvaldo Barreras, witness for the defense, waived by the prosecuting attorney, which admission was requested as part of an incident wherein the defense requested that the statement be produced and it was denied by the court; said statement introduced by the prosecuting attorney as evidence in rebuttal, for the purpose of impeaching the witness, who was given the statement during the examination to examine it, was admitted, over the defense's objection, because the witness was asked as to the content of the statement, possibly in conflict with his testimony.

. . . but his other statements—which in fact only stated the truth—could not have prejudiced the defendants." The error assigned was not committed.

3. The trial court erred in limiting the cross-examination of witness Socorro Avilés and thereby preventing her impeachment by the defense and thus violating the right to an impartial and fair trial.

█ We have related the incident which gives rise to this assignment in paragraph (d), footnote 1 of this opinion. We reaffirm now that this error was not committed.

4. The trial court erred in not permitting the defense to lay down the grounds for the impeachment of witness Blasina B. de Cruz.

█ The error was not committed for it was sought to impeach the witness' testimony to the effect that she did not notice that the prosecutrix smelled of liquor by asking whether she had been asked that when she made her first written statement or at any subsequent time. The trial judge decided motu proprio that since it was sought to impeach a witness she had to be allowed to read her statement pursuant to, correctly in our judgment, the ruling in *People* v. *Lebrón, supra.*

5. The trial court erred in not permitting the defense to impeach the testimony of prosecutrix Socorro Avilés with witnesses Luis Berríos, Elmo Cabán, and María Luisa Benítez.

█ The testimony of said witnesses deals with several questions which, upon being objected to by the prosecuting attorney, were declared to be leading and not admitted by the court, which, in our judgment, was correct.

6. The trial court erred in permitting the prosecuting attorney to give Celestino Cruz Milles, witness for the prosecution, a statement to refresh his memory.

■ On cross-examination of his witness, when the latter did not recall that the prosecutrix had spoken to him about something, the prosecuting attorney gave him his previous statement to read, a copy of which he had passed to the defense, and announced that it was to refresh his memory. Over the objection of defendant's counsel the trial court allowed the witness to refresh his memory with said statement. In support of this assignment of error § 154 of the Law of Evidence, 32 L.P.R.A. § 2146, and the case of *Castro* v. *González*, 58 P.R.R. 369, 381 (1941) are cited. Although in the civil case just cited we said that: "the testimony given before the district attorney cannot be considered the memorandum to which the Law of Evidence refers," in criminal cases in California, from which said provision originates, the witness' previous statements given before an investigating officer or the grand jury have been considered to refresh the former's memory. *People* v. *Selby*, 198 Cal. 426 (1926); *People* v. *Durrant*, 116 Cal. 179 (1897); *People* v. *Page*, 28 Cal. App.2d 642 (1938). In any event, the record does not clearly show that if the error assigned had been committed defendant's substantial rights were impaired.

7. The court erred in permitting witnesses for the prosecution to make conclusions as to the prosecutrix's state of mind.

■ The defense objected that witness Celestino Milles, upon being examined by the prosecuting attorney as to the manner in which the prosecutrix called for help, answered that she did it "desperately," and that witness Blasina B. de Cruz answered that when the prosecutrix arrived at her house the former "noticed her anguish," referring to her state of mind. The defense maintains that these are opinions and should not be admitted. It is not right. They are statements as to prosecutrix's state of mind which the trial court admitted in its sound discretion, these being matters within

the scope of the witness' observation or experience and which are perceived through the senses, *People* v. *Rivera*, 79 P.R.R. 697, 703 (1956).

8. The trial court erred in permitting the prosecuting attorney to introduce hearsay evidence through policeman Isabelo Román Díaz.

■■ The trial court permitted, over the objection of the defense, said policeman to testify that the prosecutrix told him that "defendant had taken her to different places . . . where he had beaten her" and "lastly he had taken her to a housing development . . . where he tried to rape her" and then he continued to offer more hearsay evidence. The court erred in admitting such testimony, for said statement did not qualify as evidence for "res gestae" since the prosecutrix had made said statement previously to other witnesses. The prosecutrix and other witnesses had previously testified as to said premises independent of said testimony. The rule in *People* v. *Fournier*, 77 P.R.R. 208, 244, 245, 246 (1954), relied on by the defense, is not applicable, for it dealt with the admission of a confession obtained under coercion. In this case no confession is in controversy. Since the charge in this case is for the attempt to commit rape and, consequently, no corroborative evidence whatsoever is necessary, the prosecutrix's testimony required no additional proof whatsoever, it being believed and sufficient at law for the conviction.

9. The prosecuting attorney laid the foundation for the impeachment of witness Osvaldo Barreras, maintaining that the latter had told the defendant "that he was going to help him" and then he did not introduce evidence to establish said fact, and also laid the bases to establish that the witness for the defense, María Orangert, had a bad reputation and he did not introduce evidence to support it either, thus prejudging said two witnesses before the jury.

628 ■

■ The prosecuting attorney waived Barreras' testimony. The defense used it. On cross-examination the prosecuting attorney asked him, "Is it not true that every time there is a recess in this trial you talk to him [the defendant] . . ." He answered, "Sometimes." The prosecuting attorney proceeded: "Sometimes or always? Did you not tell him, 'I am going to help you.' " The witness answered no, and when the prosecuting attorney insisted he testified that he made the negative answer under oath. There was no objection from the defense. The incident concerning witness María Orangert consisted in the prosecuting attorney asking her, on cross-examination (after she had testified that she worked in a bar across from the Professional Building pharmacy), where did the prosecutrix work and that in the afternoon of the events which gave rise to this prosecution defendant went to the bar and from there he signaled prosecutrix and then both went off in his automobile, and that she told defendant that she was willing to go to the authorities; whether defendant did not tell her "Well, as you know these affairs, go to the prosecuting attorney," a fact which the witness denied. Then the prosecuting attorney asked her whether her work contract in said bar "was to the effect that if anybody came and invited you to go out, you went" which the witness also denied. The trial court sustained the defense's sole objection during this part of the examination, to the prosecuting attorney's question as to whether during her employment in the bar she "did not go out with anybody." To support the error defendant cites the case of *People* v. *Díaz*, 74 P.R.R. 348, 365 (1953). It is evident that the record does not show that the prosecuting attorney neither abused these witnesses nor was aggressive in addressing them. Although it could be said that in the prosecuting attorney's questions there was an element of incrimination, it has not been shown that his conduct caused prejudice in the mind of the jury and that the trial had not been fair and impartial.

10. The trial court erred in not ordering the prosecuting attorney to produce the statements of witnesses for the prosecution Osvaldo Barreras, Luis Berríos and Elmo Cabán, who were waived by the prosecuting attorney and called by the defense when the latter requested them; and in not admitting, finally, Osvaldo Barreras' statement offered by the defense after the prosecuting attorney gave him said statement to read and in admitting it when offered in rebuttal by the prosecuting attorney.

 The request by the defense to the effect that these witnesses' statements be produced as soon as the prosecuting attorney waived them was properly denied. *People* v. *Ramos*, 84 P.R.R. 542 (1962); *People* v. *Cotto Torres*, *ante*, p. 22. After Osvaldo Barreras testified as witness for the defense, the latter asked him whether he had made a sworn statement as to the facts and he answered in the affirmative. The defense again requested said statement and the trial judge motu proprio denied it. On examination by the defense, the witness said that he did not need the statement to determine whether all he had said to the prosecuting attorney was therein. In the course of his cross-examination the prosecuting attorney gave said witness his previous statement to read and then, on examination by the prosecuting attorney, he testified that the prosecutrix had told him "that a man had taken her to that Monte and attempted to rape her, but that she was able to escape and it was thus that she came to my sister's house and that he informed the police what she told him." Once the witness was confronted by the prosecuting attorney with his statement, the defense requested the admission of said statement in evidence so the jury could be informed of the whole statement and realize whether the witness omitted voluntarily or involuntarily a vital fact to the defense or determine whether the witness for any reason whatsoever had any reserves in relation to his statement. The

prosecuting attorney objected and the court did not admit it, but later, at the request of the prosecuting attorney, admitted it to impeach the witness. It is alleged that it was not admissible for impeachment purposes because when the witness was confronted with the statement, he did not deny the relation of the facts he had made therein; that it was rather a testimony about facts omitted in the statement, that is, that during the trial the witness testified that prosecutrix had told him that she did not want to cause damage to anybody, which did not appear in the statement, and that he did not testify as to facts narrated in the statement. We believe the court committed error in not admitting the statement at the request of the defense, pursuant to the rule established in *People* v. *Pacheco*, 83 P.R.R. 505, 514–17 (1961). However, the error was harmless, for the purpose of the defense to have the whole statement go to the jury was accomplished. Moreover, the record contains independent evidence to support the verdict so that the manner in which the sworn statement in question was admitted has caused no substantial prejudice to defendant. Judgment in *People* v. *Cotto Torres, supra; People* v. *Pacheco, supra.*

The trial court erred in not permitting the prosecuting attorney to deliver to the defense a copy of the testimony of witness Luis Berríos, waived by the prosecuting attorney, once the former had testified for the defense. *People* v. *Díaz*, 86 P.R.R. 529 (1962). We agree with the Solicitor General that this error did not cause substantial prejudice to defendant. To that effect the Solicitor General states in his memorandum the following:

". . . However, we allege that the ruling laid down in the case of *People* v. *Ramos*, 84 P.R.R. 542 (1962), is applicable to the present case to the effect that the commission of an error which ordinarily entails the reversal of the judgment is not reversible in the presence of very special circumstances which make the principle inapplicable. It is in a certain way the old doctrine that

a harmless error is not reversible. *Cf. People* v. *Cruz,* 87 P.R.R. 124 (1963).

"The evidence for the prosecution in the present case is abundant. The testimony of witness Luis Berríos does not involve any fundamental question of the facts of this case. On being questioned by the defense whether in his sworn statement he had said the same thing he had testified to in court, the witness answered 'nearly all.' (T.E. pp. 736–737.) He was not impeached by the prosecuting attorney. This court has not decided that the mere fact that defendant was not given a copy of a sworn statement made before the prosecuting attorney violates the basic provisions of the due process of law, but it has held that it is a question of knowledge of the whole truth for the purpose of doing true justice. *People* v. *Ribas, supra* at 374. The defendant-appellant has not set forth the damages the alleged error of the trial court caused him. In the case of *People* v. *Díaz, supra,* this Court held the following:

'Here the witness waived by the district attorney testified, and although he was called by the defense it is only reasonable that defendant should have an opportunity to inspect the statement *in order to ascertain whether the testimony given at the trial agrees in its essential aspects with his previous statement.* This is consistent with the theory that *the purpose is to ascertain the truth* to further fair administration of justice.' (Italics by Solicitor General.)

Under these circumstances the only manner in which prejudice might be caused to defendant would be if the witness' testimony were incriminating and the refusal of the court to allow a sworn statement in the hands of the prosecuting attorney to be delivered to the defendant deprives the latter of an effective means to impeach the witness. But here defendant-appellant does not allege the incriminatory nature of the testimony of witness Luis Berríos. Evidently, it is not. On the contrary, it was beneficial to defendant. This witness does not establish that defendant-appellant attacked the prosecutrix in El Bosque Hotel as was the general drift of her testimony. (T.E. pp. 115 *et seq.* and 272 *et seq.*) The witness testifies that he went to remove the chain in order to drive the car out. (T.E. p. 731.) The evidence introduced by prosecutrix' testimony was to the effect that defendant-appellant 'backed the car violently and broke the edge of something there and drove out immediately.' (T.E. p.

119.) The witness also testified that said young lady (referring to prosecutrix) did nothing, and when he was asked as to the way the automobile left the place he said 'slowly'. (T.E. p. 732.) It is important to further point out, that this scene of defendant-appellant entering a hotel or motel with prosecutrix is repeated several times according to the evidence, in other places and in the presence of other persons, also witnesses in the case. (T.E. pp. 120 *et seq.* and 125 *et seq.*, etc.) We consider that defendant-appellant would have attained nothing profitable for his cause with the delivery of witness Luis Berríos' sworn statement to the defense. Defendant-appellant did not need to impeach said witness for his testimony was very favorable to his theory of defense and contradictory to the incriminating evidence believed by the jury. To apply the rule in the case of *People* v. *Díaz, supra,* under the present circumstances would be more like a geometrical exercise than an endeavor to attain the light of the truth, which is the aim of the rule. In the case of *People* v. *Cotto Torres, supra,* Mr. Justice Santana Becerra maintains in a separate opinion that defendant should be entitled to the sworn statements in possession of the prosecuting attorney as soon as the witnesses are waived by the prosecuting attorney. Moreover, 'in the light of all the facts and circumstances appearing' in the case, he considers that the refusal to order the delivery of said statements did not constitute substantial prejudice to defendant. It is evident, then, that the rule depends on the facts and circumstances of each case and the same should not be applied mechanically and inflexibly."

The incident in relation to witness Elmo Cabán will be discussed when considering error number thirteen.

■ 11. The trial court erred in not admitting in evidence a statement offered by policeman Manuel Vázquez, witness for the defense, before the prosecuting attorney, which the latter used to impeach him, and the court erred in later admitting it as evidence in rebuttal by the prosecuting attorney.

12. The trial court erred in permitting the prosecuting attorney to ask policeman Manuel Vázquez, witness for the

defense, as to the contents of another written statement without presenting said statement which would be the best evidence.

The trial court committed the error under the eleventh assignment, as we have shown in considering the incident related to the testimony and the sworn statement of witness Osvaldo Barreras under the previous tenth assignment. The statement referred to in the twelfth assignment was given by the witness before the General Inspector of the Police in relation to witness' friendship with prosecutrix and her sister, Antonia. This testimony was given on examination by the defense. Then, on examination by the prosecuting attorney, the witness testified that said statement was in relation to jewelry and belongings of the prosecutrix and that she had never had them.

We do not believe that the eleventh error has substantially prejudiced defendant, for the statement was introduced in evidence and it accomplished the purpose of the defense to have the jury consider the whole statement. The assignment of error relating to the testimony given by witness Velázquez before the General Inspector does not indicate any prejudice whatsoever suffered by defendant. Assuming that said error was committed, the evidence adduced from the prosecuting attorney's questions referring to said statement could not cause any substantial prejudice whatsoever to defendant.

13. The trial court erred in giving contradictory instructions in relation to Elmo Cabán's testimony offered by the prosecuting attorney for impeachment purposes and offered by the defense as evidence.

As a witness waived by prosecuting attorney he testified for the defense that while he was judicial administrator of San Antón Hotel, in the night of the events which

gave rise to this action, defendant was in said place accompanied by the prosecutrix and that he saw them and told defendant that he could not lodge them; that he heard prosecutrix telling defendant to take her home, that she had some medicines for her father, and to please take her home as soon as possible; that then defendant got into the automobile and they left; that when the prosecutrix spoke she addressed defendant by the nickname Cuco or Tuto; that he offered a sworn statement as to these facts. The defense requested the sworn statement and it was denied by the court. Then the prosecuting attorney, on cross-examination, gave it to the witness to read and asked whether or not the nickname of Cuco or Tuto appeared therein and the witness answered no; that the testimony of the witness that he saw the automobile almost inside the hotel premises does not appear in the statement. The court, at the request of the defense, admitted the statement as part of its evidence. Later, the prosecuting attorney offered it to impeach witness Caban's testimony, and the defense said it had no objection; and, to that effect, it was admitted. After reading said statement to the jury the trial court instructed that it could only be considered and weighed to impeach or attempt to impeach Caban's testimony and when the defense called attention to the fact that it had offered it as a part of its evidence, the court instructed the jury that "the record shows that it was a testimony to be considered by the jury as all the other evidence offered in this trial. It so appears in the record. Now then, I ratify the instructions to the effect that, when said statement is offered by the prosecuting attorney for the purpose of impeachment, in that event, you may consider it for the impeachment of Elmo Caban's testimony."

Although the instruction could have created some confusion in the mind of the jury, we do not believe it caused defendant substantial prejudice. It was admitted without

objection for both purposes and, actually, it served both purposes.

In view of the foregoing the judgment will be affirmed.